# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# (RICHMOND DIVISION)

PHILIP MORRIS USA INC.,

    Plaintiff,

v.

AMERICAN ACCESSORIES
INTERNATIONAL, L.L.C.,

    Defendant.

**Civil Action No. 3:15-cv-00577-JAG**

## PM USA'S REPLY IN SUPPORT OF ITS MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Date:  June 22, 2016

Turner Broughton (VSB # 42627)
Brendan O'Toole (VSB # 71329)
WILLIAMS MULLEN
200 South 10th Street
Richmond, VA  23219
Phone: (804) 420-6000
Fax:    (804) 420-6507

Anand Agneshwar (*pro hac vice*)
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY  10022
Phone: (212) 715-1000
Fax:    (212) 715-1399

Paige Sharpe (VSB # 88883)
Jocelyn Wiesner (*pro hac vice*)
Emily May (*pro hac vice*)
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, DC  20001
Phone: (202) 942-5000
Fax:    (202) 942-5999

*Counsel for Plaintiff Philip Morris USA Inc.*

# TABLE OF CONTENTS

**Page**

Question of Law 1:   The Purchase Orders govern the purchase of the Flashlight........................... 1

Question of Law 2:   The Flashlight was defective. ................................................................... 2

Question of Law 3:   The Purchase Orders do not limit PM USA's remedies. .............................. 6

Question of Law 4:   The warranty provision imposes no limits on PM USA's damages. ............. 9

Question of Law 5:   AAI should not be allowed to challenge the scope of the recall.................. 11

Question of Law 6:   There are no material factual issues on damages......................................... 12

CONCLUSION................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bala v. Commonwealth of Va. Dep't of Conservation & Recreation*,
   No. 3:12CV748-HEH, 2014 WL 1281235 (E.D. Va. March 27, 2014) ...................................8

*Brazos River Auth. v. GE Ionics, Inc.*,
   469 F.3d 416 (5th Cir. 2006) .............................................................................................4, 5

*Carpenter Insulation & Coatings v. Statewide Sheet Metal & Roofing*,
   937 F.2d 602, 1991 WL 120315 (4th Cir. 1991) ...................................................................11

*Christopher Associates, L.P. v. Sessoms*,
   245 Va. 18 (1993) ..................................................................................................................9

*Coghlan v. Wellcraft Marine Corp.*,
   240 F.3d 449 (5th Cir. 2001) .................................................................................................3

*Dacor Corp. v. Sierra Precision*,
   753 F. Supp. 731 (N.D. Ill. 1991) ........................................................................................10

*Dow Chem. Corp. v. Weevil-Cide Co., Inc.*,
   897 F.2d 481 (5th Cir. 1990) .............................................................................................5, 6

*Doyle v. Sentry Ins.*,
   877 F. Supp. 1002 (E.D. Va. 1995) .......................................................................................1

*Foothill Capital Corp. v. East Coast Bldg. Supply Corp.*,
   259 B.R. 840 (E.D. Va. 2001)...........................................................................................8, 10

*Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*,
   789 F. Supp. 2d 1148 (D. Minn. 2011), *aff'd*, 703 F.3d 1104 (8th Cir. 2013) .....................2, 3

*Gordon v. Pete's Auto Service of Denbigh, Inc.*,
   837 F. Supp. 2d 581 (E.D. Va. 2011) ...................................................................................11

*Kocinec v. Pub. Storage, Inc.*,
   489 F. Supp. 2d 555 (E.D. Va. 2007) ....................................................................................9

*Land and Marine Remediation, Inc. v. BASF Corp.*,
   No. 2:11CV239, 2012 WL 2415552 (E.D. Va. June 26, 2012 .................................................8

*Ndeh v. Midtown Alexandria, LLC*,
   300 F. App'x 203, 2008 WL 4934502 (4th Cir. 2008)............................................................9

*Parker v. Danzig*,
  181 F. Supp. 2d 584 (E.D. Va. 2001), *aff'd*, 22 F. App'x 267 (4th Cir. 2001)..........................6

*Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Div. of Timberjack, Inc.*,
  972 F.2d 6 (1st Cir. 1992)...............................................................................................4

*QVC, Inc. v. MJC Am., Ltd.*,
  904 F. Supp. 2d 466 (E.D. Pa. 2012), *amended*, No. CIV.A. 08-3830, 2013
  WL 3976043 (E.D. Pa. Aug. 5, 2013) ...........................................................................3, 10

*Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron*,
  805 F.2d 907 (10th Cir. 1986) ............................................................................................5

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
  No. 03CV1851, 2006 WL 2524187 (E.D.N.Y. Aug. 30, 2006) ..................................................3

*In re Second Chance Body Armor, Inc.*,
  421 B.R. 823 (Bankr. W.D. Mich. 2010)................................................................................4

*SNC-Lavalin Am., Inc. v. Alliant Techsystems, Inc.*,
  858 F. Supp. 2d 620 (W.D. Va. 2012) ..................................................................................11

*Starr Elec. Co. v. Fed. Ins. Co.*,
  15 Va. Cir. 374 (Va. Cir. Ct. 1989)........................................................................................8

*United California Bank v. Eastern Mountain Sports Inc.*,
  546 F. Supp. 945 (D. Mass.1982), *aff'd without opinion*, 705 F.2d 439 (1st
  Cir. 1983) ..........................................................................................................................10

*Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*,
  No. 3:11CV630, 2012 WL 2905110 (E.D. Va. July 16, 2012) ................................................1

*Wood Products, Inc. v. CMI Corp.*,
  651 F. Supp. 641 (D. Md. 1986)..........................................................................................3

**Other Authorities**

16 C.F.R. § 1115.4 .................................................................................................................3

2 Weinstein, et al., Fed. Evid., § 407.0-6[1] (2d ed. 1997)...........................................................5

*Black's Law Dictionary* (10th ed. 2014)....................................................................................3

Fed. R. Civ. P. 56(g) ...............................................................................................................11

Fed. R. Evid. 407 .................................................................................................................4, 5

In the Kafkaesque world AAI has created in its summary judgment briefs, a company that holds itself out as an expert in product design and development can propose, create, patent, develop, manufacture and deliver to a customer a product that is not only defective but blows up in people's hands, yet remain completely free from any responsibility for the resulting costs. No reasonable customer would agree to that. PM USA did not agree to it here.

Once distilled to the *material* facts, the briefs reveal a basic breach of contract case in which a manufacturer delivered a faulty product to a buyer, agreed to pay any and all resulting costs and then steadfastly refused to honor these commitments. No amount of distraction can obscure that basic reality.

In the end, this case presents six discrete legal issues of contract formation and interpretation. This brief identifies those legal issues, and explains why each issue can and should be decided in PM USA's favor based on the law and undisputed facts.[1]

*Question of Law 1: The Purchase Orders govern the purchase of the Flashlight.*

Whether the Purchase Orders constitute a binding enforceable contract is a legal question for the Court. *See Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*, No. 3:11CV630, 2012 WL 2905110, at *5 (E.D. Va. July 16, 2012) ("the question of whether or not a contract was formed is a question of law") (quoting *Mullins v. Mingo Lime & Lumber Co.*, 176 Va. 44, 47 (1940)). AAI does not challenge that the Purchase Orders govern the purchase of the Flashlight, AAI Opp'n at 13, and indeed, AAI itself relies on the provisions of the Purchase Orders to

---

[1] AAI's Opposition includes a "Statement of Facts as to which there is a genuine issue." However, this Court need not consider any "facts" that are not material to deciding the operative questions of law. *See Doyle v. Sentry Ins.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995) ("Factual disputes that are irrelevant or unnecessary will not be counted.") (citations omitted).

identify the parties' rights and obligations. AAI Opp'n at 7. For that reason, this case turns on what the Purchase Orders say about the parties' rights and obligations.

*Question of Law 2: The Flashlight was defective.*

AAI does not contest that the Flashlight it delivered to PM USA exploded in consumers' hands.

From the first reports of injury, AAI acknowledged the defective nature of the product it provided. AAI (i) recommended that the companies stop shipping the remaining flashlight inventory, (ii) conducted an investigation in which it recreated the hazard, (iii) proposed sending revised instructions to consumers, (iv) told a consumer how to re-design the product by removing the striker pad, (v) promised a consumer it would "look at possible design changes"; (vi) admitted the foam insert was not originally intended for safety; (vii) eventually assisted PM USA in providing information about the hazard to the Consumer Product Safety Commission, by proposing edits to the "Full Report"; and (viii) even after litigation was initiated, admitted that the instructions "could have been better." *See* **PM USA S.J. Exs. 11** (David Zeanah Dep. 186:15-187:4, 196:12-197:6), **29**, **32**, **33**, **35**, **36** (Eric Zeanah Dep. 167:4-16, 196:24-197:5), **37** (Nancy Nord Dep. 45:9-46:4), **44**, 53 (Elizabeth Buc. Dep. 69:14-17, 72:6-14). AAI cannot credibly contend that the Flashlight was not defective given this record.

AAI nonetheless seeks to avoid this conclusion by arguing that the product's problems do not rise to the level of a design defect under product liability law. AAI Opp'n at 15. In AAI's view, the issue is whether a product is "unreasonably dangerous [as] a question of fact." *Id.* But this is a breach of contract action for supplying faulty goods, not a product liability lawsuit. That distinction matters. *See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1156 (D. Minn. 2011), *aff'd*, 703 F.3d 1104 (8th Cir. 2013) (plaintiff's

contract claim is not "rooted in any alleged defect in the product," but rather defendant's "failure to do what it agreed to do"); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 n.4 (5th Cir. 2001) ("the [plaintiffs'] claims are rooted in basic contract law rather than the law of product liability: the [plaintiffs] assert they were promised one thing but were given a different, less valuable thing"); *QVC, Inc. v. MJC Am., Ltd.*, 904 F. Supp. 2d 466, 490-91 (E.D. Pa. 2012), *amended*, No. CIV.A. 08-3830, 2013 WL 3976043 (E.D. Pa. Aug. 5, 2013) (product defective under contract and not product liability law); *Wood Products, Inc. v. CMI Corp.*, 651 F. Supp. 641, 647 (D. Md. 1986) (similar).

In this context, the word "defect" must be given its plain and ordinary meaning: "a lack of something necessary for completeness, adequacy or perfection." *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03CV1851, 2006 WL 2524187, at *7 (E.D.N.Y. Aug. 30, 2006); *see also Black's Law Dictionary* (10th ed. 2014) ("defect" means an "imperfection or shortcoming, especially in a part that is essential to the operation or safety of a product"). It is enough, therefore, for PM USA to establish that the product AAI promised was not what AAI delivered. *Gen. Mills*, 789 F. Supp. 2d at 1156; *Coghlan*, 240 F.3d at 455 n.4. Under the plain and ordinary meaning of "defect," the Flashlight was incomplete, inadequate, and imperfect by virtue of its design *and* by virtue of the ineffective instructions that accompanied it. *See Sci. Components*, 2006 WL 2524187, at *7.[2]

AAI next argues that its admissions of defect constitute inadmissible "subsequent remedial measures." AAI Opp'n at 17-18. AAI's argument misses the point. It is AAI's *admissions* of a defect contained within the documents — and not AAI's proposed measures

---

[2] The CPSC likewise considers consumer products defective whenever there is some "fault, flaw, or irregularity that causes weakness, failure, or inadequacy in form or function," including when the "instructions for assembly or use could allow the product . . . to present a risk of injury." 16 C.F.R. § 1115.4.

3

themselves — that establish a defect as a matter of law.  *See* **PM USA S.J. Mot. Exs 11, 29-33, 35-37, 53**.

Moreover, for its own case, AAI relies heavily on its own proposals to provide consumers a revised instruction sheet and a video instructing them to redesign the product by removing the striker pad.  AAI seeks to use this evidence to show it devised "a viable alternative to the fast track product placement recall PM USA ultimately pursued."  Def. Mem. in Opp'n. to Mot. to Exclude Dr. Buc, DE 72, at 9.  Given AAI's desire to use these items of evidence affirmatively, AAI must take the bad with the good — including its admissions of defect.

Rule 407 does not apply to exclude AAI's admissions for other reasons.  Fed. R. Evid. 407.  Rule 407 rests on social policy that encourages companies to further product safety.  The instant case, however, is not a lawsuit to recover for consumer injury or harm.  It is a lawsuit for a breach of contract, and AAI's concessions regarding the product defect establish liability under the contract.  The policies behind Rule 407 do not support its application in this circumstance. *See, e.g.*, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 428-29 (5th Cir. 2006) (Rule 407 "would not be an issue if recovery is not being sought for injury or harm"); *In re Second Chance Body Armor, Inc.*, 421 B.R. 823, 836 (Bankr. W.D. Mich. 2010) (it would be "illogical to permit [] defendant to identify a long 'chain of events' in a commercial relationship, randomly select one occurrence as the 'event' for purpose of Rule 407, and assert that evidence of actions taken after that selected point in time should be barred as subsequent remedial measures").[3]

In addition, Rule 407 does not exclude evidence of a party's post-accident investigation.  Nor does it exclude conclusions made regarding those post-investigative reports — such as

---

[3]   No policy would be served by excluding AAI's proposed actions.  Had PM USA done what AAI suggested, PM USA would have put itself and AAI at risk for millions of dollars in civil penalties and left consumers *exposed to injury*.  Far from being "remedial," AAI's proposed "fix" would have magnified the risk.

statements made during depositions about the product defect. *See Brazos River Auth.*, 469 F.3d at 430-431 (Rule 407 does not exclude post-accident investigation reports); *Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992) (same); *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron*, 805 F.2d 907, 918 (10th Cir. 1986) (same). All of AAI's "information gathering and testing" following the initial consumer reports (including the admissions of defect contained therein) is, accordingly, properly before this Court. *See* **PM USA S.J. Mot. Exs. 29, 30, 32, 33, 35.** Likewise, AAI's statements (including those of its experts) regarding the product defect based on such information gathering and testing are admissible. **PM USA S.J. Exs. 31, 36** (Eric Zeanah Dep. 167:4-16, 196:24-197:5), **11** (David Zeanah Dep. 186:15-187:4), **PM USA S.J. Mot. Ex. 37** (Nancy Nord Dep. 45:9-46:4), **Ex. 53** (Elizabeth Buc Dep. 69:14-17, 72:6-14).

Further, Rule 407 excludes only evidence of measures "taken" that "would have made an earlier injury or harm less likely to occur." Fed. R. Evid. 407 (emphasis added); 2 Weinstein, et al., Federal Evidence, § 407.0-6[1] (2d ed. 1997) ("It is only if changes are implemented as a result of the tests that the goal of added safety . . . is furthered, and even then, it is only evidence of those changes that is precluded by the rule"); *Dow Chem. Corp. v. Weevil-Cide Co., Inc.*, 897 F.2d 481, 487 (5th Cir. 1990) ("There is nothing remedial about the report's recommendation . . . . Remedial measures are those actions taken to remedy any flaws or failures. . . ."). Here, although AAI provided the revised instructions to one consumer, that was not a remedy with respect to the public at large. AAI's recommended e-mail blast to all

5

consumers was just that: a recommendation. It was a measure never taken. For all of these reasons, the evidence is not protected by the Rule. *See* **PM USA S.J. Mot. Exs 31, 35.** [4]

AAI's reliance on Rick Clements' email stating that the Flashlight is "not defective" does not create a factual dispute on this issue. First, Mr. Clements made that statement in March 2014, well before anyone understood the extent of the Flashlight defect. Second, Mr. Clements explained at his deposition what he meant by that statement, and his testimony is conspicuously missing from AAI's brief. Mr. Clements testified that he was repeating the position of AAI, and not PM USA. **Ex. 1** (Rick Clements' Dep. 30:2-31:3). There is no evidence to the contrary.

Mr. Clements's email does not bind PM USA in any event. *See Parker v. Danzig*, 181 F. Supp. 2d 584, 592 (E.D. Va. 2001), *aff'd*, 22 F. App'x 267 (4th Cir. 2001) ("In order for a statement to constitute a party admission . . . the proponent for admission must produce independent evidence showing that the scope of the declarant's authority included the matters discussed in the alleged conversations.") (citations omitted).

***Question of Law 3: The Purchase Orders do not limit PM USA's remedies.***

AAI warranted that all Goods provided under the Purchase Orders would be "free from defects in . . . design," without limitation. Purchase Orders ¶ 13. AAI argues that other provisions of the Purchase Order absolve it from responsibility under this clause. AAI's arguments fail as a matter of contract interpretation.

*First*, AAI argues that the Purchase Orders incorporated PM USA's Quality Assurance Guidelines (the "Guidelines") and those Guidelines purportedly shifted the burden of making a safe product from AAI to PM USA. AAI then spends nine pages discussing a specification

---

[4] Although AAI provided the revised instructions to one consumer, that was not a remedy with respect to the public at large. AAI's proposed e-mail blast to all consumers was a measure never taken. *Dow Chem.*, 897 F.2d at 487.

6

analysis that AAI drafted and approved, but was developed *after* the Flashlight was designed and *after* AAI manufactured numerous prototypes of the Flashlight. This entire discussion is irrelevant to AAI's contractual obligations. AAI Opp'n at 18-27.

Under the plain language of the Purchase Orders, the Guidelines do not impose any obligations on PM USA. The Purchase Orders require the "Supplier" to comply with "Buyer's Quality Assurance Guidelines," and provide the "Buyer" with certain additional rights. *See* Purchase Orders ¶ 14. That language imposes obligations on the "Supplier," not on PM USA (the "Buyer"). *See id.* The Purchase Orders also specify that no documents outside of the Purchase Orders impose obligations on PM USA. Purchase Orders ¶ 2.[5]

Consider also the consequences if AAI's argument was accepted: a manufacturer that designed, manufactured, patented, marketed, sold, and delivered a faulty product would be absolved from any and all responsibility for the safety of the product — no matter how broadly the manufacturer agreed to indemnify the buyer — simply because the buyer put in place its own extra step to help ensure that the product complied with applicable specifications before delivery to consumers. That makes no sense. It also finds no support in contract law or the agreements here.

*Second*, AAI argues that a Purchase Order provision requiring AAI to conform the Flashlight to the Specifications somehow undermines the parties' clear warranty. AAI Opp'n at 20-22. But there is nothing inconsistent about those obligations: AAI agreed to conform to manufacturing Specifications that were based on its own design, and warranted that doing so would produce Flashlights "free from defects in . . . design." There is nothing unfair or

---

[5] There are numerous other reasons why these Guidelines and Specifications are irrelevant, which are set forth in PM USA's Opposition to AAI's Motion for Summary Judgment. *See* PM USA Opp'n at 5-8 (explaining that AAI relies on an outdated version of the Guidelines); *id.* at 11-13 (explaining why the Specifications are not the type that abrogate implied warranties).

7

ambiguous about AAI's agreeing to stand by its design by promising it would be defect-free. And the record evidence on this issue is clear and undisputed: AAI developed the concept and design of the Flashlight *prior* to the issuance of any specifications. *See* PM USA Mot. for Partial Summ. J. at 2-5.

Ultimately, interpreting unambiguous contractual language is a question of law for the Court. *See Bala v. Commonwealth of Va. Dep't of Conservation & Recreation*, No. 3:12CV748-HEH, 2014 WL 1281235, at *2 (E.D. Va. March 27, 2014) (disputes regarding contract interpretation are particularly well suited for summary judgment); *Foothill Capital Corp. v. East Coast Bldg. Supply Corp.*, 259 B.R. 840, 844 (E.D. Va. 2001) (when contract language is clear and unambiguous the court must "construe contractual language according to its plain and ordinary meaning") (citations omitted). Under black letter law, the Court should interpret the contract as written and ignore AAI's voluminous and irrelevant references to the Guidelines and the post-design Specifications.[6]

Even if AAI's warranty to deliver a product "free from defects" did not apply, AAI would still be liable under its separate warranty to "assume[] and acknowledge[] full and complete responsibility for the suitability, adequacy, and safety of the design" of the Flashlight. Purchase Orders ¶ 13. AAI provides no serious argument against its numerous admissions that it designed the Flashlight:

---

[6] AAI also argues that it is not liable for common law implied claims of merchantability because the Flashlight was purportedly built to PM USA's specifications. *See* AAI Opp'n at 19-20. But even if AAI were correct that AAI used PM USA specifications, -- and it is not -- the common law on implied claims has no bearing on how the parties assign their contractual rights and obligations. *See Land and Marine Remediation, Inc. v. BASF Corp.*, No. 2:11CV239, 2012 WL 2415552, at *7 (E.D. Va. June 26, 2012) ("The Virginia Supreme Court is 'committed to the view that parties may contract as they choose so long as what they agree to is not forbidden by law or against public policy.'") (quoting *Chesapeake & Potomac Tel. Co. of Va. V. Sisson and Ryan, Inc.*, 234 Va. 492, 503 (1987)); *Starr Elec. Co. v. Fed. Ins. Co.*, 15 Va. Cir. 374, 377 (Va. Cir. Ct. 1989) ("Of course, freedom of contract principles, permit parties to alter common law risk allocation by agreement.").

- AAI filed a patent application in China for the Flashlight, which identified David Zeanah of AAI as one of the inventors of the product. **PM USA S.J. Mot. Ex. 18**. No one from PM USA was identified as an inventor. *See id.* AAI informed PM USA that it intended to patent the Flashlight in July 2013 because it "[felt] strongly about the compass flashlight with match holder." **PM USA S.J. Ex. 17**. AAI does not mention this document in any of its briefs.

- AAI's President and majority shareholder conceded that AAI was responsible for the design of the Flashlight. On April 10, 2014, Eric Zeanah stated in an email to PM USA that AAI "developed and produced" the Flashlight. **PM USA S.J. Mot. Ex. 19**. AAI does not mention this document in any of its briefs.

- As part of an indemnification letter that AAI provided to PM USA, AAI stated that it maintains "all rights, title, and interest in the intellectual property associated with the Flashlight." **PM USA S.J. Ex. 16**. AAI does not mention this document in any of its briefs.

To defeat summary judgment, AAI must come forth with its own evidence to discredit these admissions. *See Kocinec v. Pub. Storage, Inc.*, 489 F. Supp. 2d 555, 558 (E.D. Va. 2007) (to defeat summary judgment non-moving party cannot rely on conjecture, but must set forth specific facts to show genuine issues for trial). AAI offers none.

***Question of Law 4: The warranty provision imposes no limits on PM USA's damages.***

AAI admits that the Purchase Order's indemnification clause is a broad provision that provides a remedy for any losses attributable to an "error, omission, or fault" of AAI under the Purchase Orders. AAI Opp'n at 24-25. AAI nonetheless asks this Court to ignore it, and find that the remedies provided by the warranty provision are exclusive.

That is wrong as a matter of law. In the absence of contract language that "*clearly* shows an intent that the [listed remedy] be exclusive," a party is entitled to "pursue any other remedy which the law affords." *Ndeh v. Midtown Alexandria, LLC*, 300 F. App'x 203, 2008 WL 4934502, at *4 (4th Cir. 2008) (citing *Bender-Miller Co. v. Thomwood Farms, Inc.*, 211 Va. 585, 588 (Va. 1971); *cf. Christopher Associates, L.P. v. Sessoms*, 245 Va. 18, 21 (1993) (interpreting as exclusive a liquidated damages clause that included language stating that, in the event of

9

breach, retention of the deposit paid by the prospective real estate purchaser was the seller's "sole and exclusive remedy . . . against Buyer").

Here, no contractual language makes the warranty clause remedies exclusive. According to its plain language, any breach of the Purchase Order — including a breach of the warranty provision — can result from an "error, omission or fault" and trigger AAI's indemnification obligations under the contract. Purchase Orders ¶ 16. That is precisely what occurred here. AAI breached its warranty, and that breach resulted from an "error, omission, or fault" of AAI. Consequently, PM USA is entitled to any and all resulting costs, including reasonable attorneys' fees, without limitation, resulting from the breach. *Id. See Foothill Capital Corp.*, 259 B.R. at 844 ("courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein") (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)).

AAI similarly argues that the "election of remedies" provision in the warranty provision means PM USA cannot recover both the cost of the recall and the cost of the product. AAI Opp'n at 28-30. But that provision requires *the supplier* to provide a refund or replacement if that is what the buyer chooses to demand. It does not say that the remedy is exclusive.

Courts facing similar breach of contract cases routinely award broad damages related to product recalls. *See, e.g.*, *QVC, Inc.*, 904 F. Supp. 2d at 496 (awarding costs associated with product recall including lost profits, customer shipping costs to return defective product, and return processing costs); *Dacor Corp. v. Sierra Precision*, 753 F. Supp. 731, 733 (N.D. Ill. 1991) (expenses of recall recoverable as consequential damages); *United California Bank v. Eastern Mountain Sports Inc.*, 546 F. Supp. 945, 970-71 (D. Mass.1982), *aff'd without opinion*, 705 F.2d

439 (1st Cir. 1983) (costs of recall campaign necessitated by seller's breach of contract recoverable as consequential damages where seller had reason to know of buyer's standards).

***Question of Law 5: AAI should not be allowed to challenge the scope of the recall.***

AAI suggests that, because it provided PM USA with alternate "recall" plans, AAI is entitled to challenge PM USA's handling of the recall, and that PM USA failed to mitigate damages. AAI Opp'n at 28-30. But AAI concedes that it neither suggested those alternate "recall" plans to CPSC nor commented in any way on PM USA's proposed recall.[7] Moreover, PM USA had no obligation to implement the "least expensive" recall plan. *See* AAI Opp'n at 29. To the contrary, AAI agreed to indemnify PM USA against ***all*** losses including reasonable attorneys' fees, as long as the losses "arose from" or "may be attributable" to an "error, omission, or fault" of AAI. Purchase Orders. ¶ 16.[8] AAI also has no evidence that its own proposed remedy or any other would have been better at protecting consumers and "less expensive" in the long run.

Even if AAI were correct that it *could* challenge the scope of the recall — and as explained above it cannot — this would be no obstacle to the Court granting summary judgment on liability. The scope of the recall goes to proper damages, not to liability.[9]

---

[7] For this reason, AAI is wrong that principles of estoppel do not apply. AAI Opp'n at 29-30, AAI stayed silent when it had the opportunity to approach CPSC with its concerns about the scope of the recall, and now seeks to avoid all responsibility for the scope of the recall CPSC accepted.

[8] Likewise, the Indemnification Clause does not provide — as AAI contends (AAI Opp'n at 25) — that it does not apply if some act or omission of PM USA contributed in part to the losses. *See Carpenter Insulation & Coatings v. Statewide Sheet Metal & Roofing*, 937 F.2d 602, 1991 WL 120315, at *3 (4th Cir. 1991) (agreement to indemnify plaintiff against "***any***" loss "arising from [defendant's] acts or omissions" does not create an exception for losses that may arise solely or in part from plaintiff's own negligence).

[9] This Court may conclude that AAI breached its contractual duties as a matter of law, and reserve the question of damages for a subsequent hearing. Fed. R. Civ. P. 56(g); *SNC-Lavalin Am., Inc. v. Alliant Techsystems, Inc.*, 858 F. Supp. 2d 620, 633 (W.D. Va. 2012) (mitigation of damages is not an element of breach of contract claim); *Gordon v. Pete's Auto Service of*

Footnote continued on next page

*Question of Law 6: There are no material factual issues on damages.*

AAI complains that summary judgment is inappropriate because PM USA has "fail[ed] to present sufficient evidence of the damages it seeks." AAI Opp'n at 30. Beginning as early as June 2014, however, PM USA specified the categories of damages it is seeking: fees paid to Stericycle and other vendors to administer the recall, the cost of the Flashlight, the cost of the replacement items, and attorneys' fees. *See* **Ex. 2**. PM USA again sent AAI an itemized list of damages, complete with the dollar amount of damages and a description of the supporting documentation for each category of damages, more than a week before AAI opposed PM USA's motion for partial summary judgment. *See* **Ex. 3**.[10] PM USA has met its burden to prove its damages using a "proper method and factual foundation for calculating damages," and a detailed computation supported by evidence. *See* AAI Opp'n at 30 (quoting *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 189 (2006)). AAI has provided no evidence to demonstrate that PM USA did not actually incur these costs, as it must do to create a genuine issue for summary judgment.

## CONCLUSION

For the foregoing reasons and those in PM USA's opening brief, PM USA respectfully requests that this Court enter summary judgment in its favor on PM USA's First, Second, and Third Causes of Action; award PM USA the $1,403,431.48 purchase price of the Flashlight and

---

Footnote continued from previous page
*Denbigh, Inc.*, 837 F. Supp. 2d 581, 586-89 (E.D. Va. 2011) (granting summary judgment on liability but reserving finding on damages).

[10] Attached with PM USA's Reply, as **Ex. 4**, is K.C. Crosthwaite's Declaration of June 21, 2016, which provides a correction to paragraph 8 of K.C. Crosthwaite's Declaration of June 1, 2016.

$5,365.089.81 in costs associated with the recall of the Flashlight; and set a schedule by which PM USA may submit its application for reasonable attorneys' fees.

Date:  June 22, 2016                               /s/
                                           Turner Broughton (VSB # 42627)
                                           tbroughton@williamsmullen.com
                                           WILLIAMS MULLEN
                                           A Professional Corporation
                                           200 South 10th Street
                                           Richmond, VA  23219
                                           Phone:   (804) 420-6000
                                           Fax:       (804) 420-6507

                                           Anand Agneshwar (*pro hac vice*)
                                           anand.agneshwar@aporter.com
                                           ARNOLD & PORTER LLP
                                           399 Park Avenue
                                           New York, NY  10022
                                           Phone: (212) 715-1000
                                           Fax:     (212) 715-1399

                                           Paige Sharpe (VSB # 88883)
                                           paige.sharpe@aporter.com
                                           Jocelyn Wiesner (*pro hac vice*)
                                           jocelyn.wiesner@aporter.com
                                           Emily May (*pro hac vice*)
                                           emily.may@aporter.com
                                           ARNOLD & PORTER LLP
                                           601 Massachusetts Avenue NW
                                           Washington, DC  20001
                                           Phone:   (202) 942-5000
                                           Fax:       (202) 942-5999

                                           *Counsel for Plaintiff Philip Morris USA Inc.*

**CERTIFICATE OF SERVICE**

      I certify that on the 22nd day of June 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following, as well as a copy via email and mail to:

F. Douglas Ross
Douglas.Ross@ofplaw.com
Bruce M. Blanchard
Bruce.Blanchard@ofplaw.com
Luke J. Archer
Luke.Archer@ofplaw.com
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190

R. Bradford Brittian
bbrittian@merchantgould.com
John T. Winemiller
jwinemiller@merchantgould.com
MERCHANT & GOULD P.C.
9717 Cogdill Road, Suite 101
Knoxville, TN 37932

Joseph Andrew Keyes
akeyes@wc.com
Richmond Turner Moore (*pro hac vice*)
rtmoore@wc.com
Shauna Meryl Kramer (*pro hac vice*)
skramer@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005

*Counsel for Defendant*
*American Accessories International, L.L.C.*

                                                      /s/
                                        Turner Broughton
                                        *Counsel for Plaintiff Philip Morris USA Inc.*